**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

---

| | | |
|---|---|---|
| **JERRY ALBEA, and** | ) | |
| **CAROLYN ALBEA,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **No. 1:15-cv-01287-STA-egb** |
| | ) | |
| **RHONDA BUNN[1],** | ) | |
| **DANNY MILLER[2],** | ) | |
| **DENNIS IFANTIS,** | ) | |
| **DAVID TRAVIS,** | ) | |
| **MADISON COUNTY,** | ) | |
| **TENNESSEE, and** | ) | |
| **GIBSON COUNTY,** | ) | |
| **TENNESSSE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

This action for deprivation of constitutional rights under 42 U.S.C. § 1983 and for injuries suffered under Tennessee law arises from the response of law enforcement to a custodial dispute between the mother of a minor child and the paternal grandparents of that minor child. The mother reported an assault and kidnapping to Madison County law enforcement. After an initial investigation, Madison County Sherriff's Deputy Dennis Ifantis contacted the Gibson

---

[1] According to Defendants' Answer, Plaintiffs have incorrectly identified Defendant Rhonda Bonds as Rhonda Bunn. Answer, at 1 n.1, Feb. 26, 2016, ECF No. 20. The Clerk is **DIRECTED** to correct Defendant Rhonda Bonds's name as shown.

[2] According to Defendants' Answer, Plaintiffs have incorrectly identified Defendant Daniel Miller as Danny Miller. Answer, at 1 n.2, ECF No. 20. The Clerk is **DIRECTED** to correct Defendant Daniel Miller's name as shown.

County's Sheriff's Department for assistance because the grandparents resided in Gibson County.  Two deputies of the Gibson County Sheriff's Department arrived at the grandparents' residence and ultimately arrested them before taking them back to Madison County to be charged with custodial interference, domestic assault, and contribution to the delinquency of a minor.  A grand jury dismissed all of the charges.  The grandparents subsequently filed this suit against Madison and Gibson Counties as well as the Sheriffs' deputies involved.  Now before the Court is the Motion of Defendants Rhonda Bonds, Daniel Miller, Dennis Ifantis, David Travis, and the Counties of Madison and Gibson, Tennessee, for Summary Judgment (ECF No. 27) on the claims raised in the grandparents' Complaint (ECF No. 1).  Plaintiffs Jerry Albea and Carolyn Albea, the aforementioned paternal grandparents, have filed a Response in Opposition to the instant Motion (ECF No. 31), to which Defendants then filed a Reply (ECF No. 33).  Thus, the Court finds the instant Motion ripe for decision.  For reasons set forth below, the Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.     BACKGROUND

The following facts are undisputed by the parties unless otherwise noted.  *See* Defs.' Statement of Undisputed Material Facts, Mar. 9, 2017, ECF No. 27-2 [hereinafter "Defs.' Statement of Facts"]; Pls.' Answers to Defs.' Statement of Undisputed Material Facts, Apr. 6, 2017, ECF No. 31-2 [hereinafter "Pls.' Statement of Facts"]; Defs.' Resp. to Pls.' Add'l Material Facts, Apr. 20, 2017, ECF No. 33-1 [hereinafter "Defs' Statement of Add'l Facts"].  Plaintiffs' son, D'Metric Albea, and Courtney Hammond ("Hammond") are the parents of a minor child, who was four years old at the time of the events described in the Complaint.  Madison County Juvenile Court awarded D'Metric Albea visitation with the minor child in a permanent parenting

plan from the Madison County Juvenile Court (the "Order"). Despite the Order granting D'Metric Albea visitation, Hammond refused to comply with the Order on multiple occasions. Plaintiffs had traveled to pick up the minor child in accordance with the Order at the time of the events giving rise to this dispute. The Order, referenced and cited to by all parties, states that the minor child is to be picked up by Plaintiffs but that D'Metric Albea must be present during the visitation. Dep. of Dennis Ifantis, Ex. 5, ¶ 2, Oct. 12, 2016 [hereinafter "Ifantis Dep."].[3]

On or about Saturday, November 29, 2014, Defendant Madison County Sherriff Deputy Dennis Ifantis ("Ifantis") received a call over the radio, reporting a possible child kidnapping. When Ifantis arrived at the scene, Hammond was hysterical. Hammond claimed that "people" had taken her two-year-old child. After a few moments, Hammond was finally able to articulate to Ifantis that the "people" were the minor child's paternal grandparents, Plaintiffs Jerry Albea and Carolyn Albea. But at that time, Hammond could not recall or state Plaintiffs' full names to Ifantis. Hammond could only recall that Jerry Albea's name was "Jerry" and she believed Plaintiffs lived in Humboldt, Tennessee.[4] Hammond additionally claimed that Jerry Albea, along with his two juvenile daughters, physically attacked Hammond, allowing Plaintiffs to take the minor child without Hammond's permission. The parties dispute whether Hammond specifically told Ifantis that Carolyn Albea was also involved in these acts, and the portions of the record cited by the parties are not sufficiently clear to permit the Court to make a determination. Pls.' Statement of Facts, at 2; Ifantis Dep. 47:24–48:5. Plaintiffs also take issue with the characterization of the removal of the minor child "by force" rather than "against [Hammond]'s wishes." Pls.' Statement of Facts, at 2. The portions of the deposition cited by the

---

[3] The parties have provided different excerpts from Defendant Dennis Ifantis's deposition (ECF Nos. 27-9 & 31-6) including exhibits such as a copy of the Order.

[4] Plaintiffs evidently did not reside in Humboldt. *See* Pls.' Statement of Facts, at 7.

parties are not clear on this point either. Ifantis Dep. 46:6–49:12. Carolyn Albea, however, did pick up the minor child, who came to her, and attempted to return to her vehicle. Hammond then requested that Carolyn Albea return the minor child to her. Plaintiffs were aware that Hammond did not want them to have possession of the minor child. A physical altercation then took place between Hammond and one of Plaintiffs' juvenile daughters in which Hammond attempt to recover the minor child. The parties dispute who escalated the altercation, but they are in agreement that the result was a "beatdown" of Hammond. Pls.' Statement of Facts, at 3; Defs' Statement of Add'l Facts, at 3–4. In any event, Plaintiffs then left with their juvenile daughters and the minor child, and they all traveled back to their residence in Gibson County, Tennessee.

Hammond informed Ifantis of the existence of the Order and that it required D'Metric Albea to be present during visitation rights. D'Metric Albea, however, was in East Tennessee at that time. Hammond stated that, because D'Metric Albea was not present at the time of Plaintiffs' arrival, she refused to relinquish custody of the minor child. Ifantis then asked Hammond for a copy of the parenting plan, but Hammond explained that she did not have a copy of the documents at that time. The parties dispute whether Hammond showed visible signs of injury at that time. Pls.' Statement of Facts, at 5. But a neighbor present at the scene substantially corroborated Hammond's portrayal of the events, also reporting that she, the neighbor, heard what sounded like "bloody murder" during the incident. Hammond's sister partially corroborated Hammond's portrayal as well, but the parties dispute the degree to which Hammond's story was supported. *Id.* at 6. After Hammond had identified Plaintiffs as the minor child's paternal grandparents, Ifantis considered the investigation to be one into a custodial issue rather than a potential kidnapping.

Ifantis was eventually able to make contact with D'Metric Albea, and they discussed the issues concerning the taking of the minor child. Ifantis does not recall asking D'Metric Albea whether he was required to be present for the pick-up of the minor child. At that time D'Metric Albea advised Ifantis of his location, which is disputed by the parties. *Id.* Ifantis then established telephone contact with Jerry Albea. The parties dispute whether Jerry Albea refused to return to the scene. *Id.* at 7. But Jerry Albea provided his address to Ifantis and corroborated the existence of a parenting plan outlining the custody rights concerning the minor child. At this point, Ifantis informed Jerry Albea that a Gibson County Sheriff's Officer would be sent to Plaintiffs' residence to confirm the well-being of the minor child and to review the purported court order. Ifantis told Jerry Albea that if the Order stated that Plaintiffs were to pick-up the minor child, "everything would be fine."

Ifantis then reached out to the Gibson County Sheriff's Department and requested the assistance of its officers. Ifantis was then put in contact with Defendant Gibson County Sheriff Deputy Daniel Miller ("Miller"). Ifantis informed Miller that there was a child custody dispute, that Plaintiffs and their juvenile daughters had allegedly assaulted Hammond, and that Plaintiffs had allegedly taken the minor child in violation of a court order.[5] Miller, along with Gibson County Sheriff Deputy Rhonda Bonds ("Bonds"), then traveled to Plaintiffs' residence.

Upon their arrival, Miller and Bonds were allowed in by Jerry Albea. Plaintiffs claim this was for the stated purpose of verifying the minor child's wellbeing and the contents of the court order despite the actual purpose being to gain entry to the residence in order to arrest Plaintiffs. Pls.' Statement of Facts, at 9; Defs' Statement of Add'l Facts, at 6. Miller and Bonds

---

[5] The parties describe these events in different terms, but the evidence cited in their statements supports Plaintiffs' description, which is given here.

then saw that the minor child was "perfectly fine." Miller was presented with an unsigned copy of the purported custody Order. Miller then spoke with D'Metric Albea, who was en route to the visitation but had been delayed in traveling from his home in Knoxville. D'Metric Albea explained that he was in possession of the signed Order that he had taken a screenshot of and sent to Plaintiffs by text message. At this point, Miller was presented with said screenshot and later stated that he had no reason to believe that it was not an accurate and true copy of the very Order Plaintiffs possessed. Miller then contacted Ifantis and explained that the child was fine and that he had seen an unsigned, physical copy of the Order as well as the signed, digital copy. Ifantis believed he had probable cause to arrest Plaintiffs for simple domestic assault, custodial interference, and contributing to the delinquency of a minor.[6] Ifantis then instructed Miller and Bonds to arrest Plaintiffs.

Relying on Ifantis's probable cause determination, Miller and Bonds effected a warrantless arrest of Plaintiffs in their homes. Plaintiffs were then placed into a Gibson County Sheriff patrol car and transported to the Gibson County-Madison County line at the Humboldt Municipal Airport by Bonds. Ifantis met Bonds at the Airport and obtained custody of Plaintiffs.

---

[6] Plaintiffs dispute this account, asserting that Carolyn Albea was taken into custody solely for "custodial interference," Defendants lacked sufficient probable cause to arrest either Plaintiff for domestic assault, and that Hammond made no allegation that Carolyn Albea contributed to the delinquency of a minor. Pls.' Statement of Facts, at 9–10. But in his deposition, which was relied on by Defendants in making their statement, Ifantis notes this characterization as correct.

> Q    . . . . "This defendant [Ifantis] made the determination that there was probable cause to arrest the plaintiffs for domestic assault, custodial interference, and a contributing to the delinquency of a minor."
> A    Correct.
> Q    Okay. So that's accurate?
> A    Yes.

Ifantis Dep. 64:15–22. There may have been and appear to be issues with this initial determination, particularly as to its legal conclusions, but the evidence provided is quite clear as to what Ifantis thought at that moment.

At that time, Ifantis handcuffed Plaintiffs, placed them in the back seat of his patrol car, and transported them to the Madison County Criminal Justice Complex. Plaintiffs were then booked and incarcerated. Prior to the conclusion of his shift that evening, Ifantis completed an investigation report and narrative concerning the arrest of Plaintiffs. After approximately fourteen hours, Plaintiffs made an $8,000 bail via a bail bondsman and were released.

On the following Monday, December 1, 2014, Madison County Sheriff's Deputy David Travis ("Travis") reviewed the investigation report and narrative concerning the arrest of Plaintiffs drafted by Ifantis and attested to the Clerk of Madison County General Sessions Court that Ifantis had articulated sufficient facts in his reports to establish probable cause concerning Ifantis's determination to arrest Plaintiffs.[7] Travis had no personal interaction with Plaintiffs whatsoever. Plaintiffs admitted that they do not know Travis or remember ever seeing or interacting with him. They further admitted they do not even know why Travis was even named in this action.

Jerry Albea was charged with simple domestic assault, contributing to the delinquency of a minor, and custodial interference. Carolyn Albea was charged with contributing to the delinquency of a minor and custodial interference. Plaintiffs' mugshots were published subsequent to their arrest. Plaintiffs then hired an attorney to represent them on their criminal charges. Following two appearances in the Madison County General Sessions Court, Plaintiffs waived their cases to the Madison County Grand Jury. And the Grand Jury found that there was insufficient evidence to support any of the charges against Plaintiffs.

---

[7] Plaintiffs dispute this statement on the grounds that Travis relied completely on Ifantis in making his statements to the Clerk, but this does not appear to be in conflict with Defendants' statement. *See id.* at 12.

## II.     STANDARD OF LAW

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  When deciding a motion for summary judgment, the Court must review all the evidence, viewing it in a light most favorable to the nonmoving party and also drawing all reasonable inferences in that party's favor.  *Roell v. Hamilton Cty.*, 870 F.3d 471, 479 (6th Cir. 2017) (citing *Watson v. Cartee*, 817 F.3d 299, 302 (6th Cir. 2016)); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court "may not make credibility determinations []or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).  "The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by 'showing . . . that there is an absence of evidence to support the nonmoving party's case.'"  *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The Court must enter summary judgment "against a party who fails to . . . [meet the burden] that party will bear . . . at trial." *Celotex Corp*, 477 U.S. at 322.

## III.   ANALYSIS

### A.   Plaintiffs' § 1983 Claim for Deprivation of Constitutional Rights[8]

Defendants move for summary judgment on Plaintiffs' Fourth Amendment claims on the basis of qualified immunity. Qualified immunity is a doctrine that "shields officials from civil liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Darrah v. Krisher*, 865 F.3d 361, 374 (6th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Its purpose is to provide some protection from suit to government officials that perform discretionary functions. *Beard v. Whitemore Lake Sch. Dist.*, 402 F.3d 598, 602–03 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine applies to police officers. *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010) (quoting *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir. 2006)). A qualified-immunity analysis has two steps: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310–11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In *Pearson*, however, the Supreme Court abandoned the requirement that the lower courts must perform this analysis sequentially because it often forced the courts to unnecessarily decide constitutional questions. *Jefferson*, 594 F.3d at 460 (citing *Pearson*, 555 U.S. 223). But the Supreme Court thought the prior statement

---

[8] Defendants first argue in their memorandum that Plaintiffs have failed to state a colorable claim under the Fourteenth Amendment's Due Process Clause. Plaintiffs reference this Clause in their Complaint but do not respond in opposition to Defendant's argument. The Court therefore finds that Plaintiffs have failed to support any such claim if they indeed intended to do so and Defendants are entitled to summary judgment. Accordingly, any claim brought against Defendants under the Due Process Clause of the Fourteenth Amendment is hereby **DISMISSED**.

of the test was "still appropriate and a correct statement of the test for qualified immunity." *Id.*

And in this instance, this Court finds it appropriate to follow the previously prescribed sequence.

### 1.    Whether a Constitutional Right Has Been Violated

The Fourth Amendment, which is applied to the States by the Fourteenth Amendment, *Ondo v. City of Cleveland*, 795 F.3d 597, 610 n.4 (6th Cir. 2015) (citing *Mapp v. Ohio*, 367 U.S. 643, 650–55 (1961)), provides first that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV.  It further states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.*  Plaintiffs claim that Defendants violated Plaintiffs' rights as guaranteed by the Fourth Amendment to the Constitution of the United States in three respects. First, Plaintiffs claim that Ifantis, Bonds, and Miller violated Plaintiffs' Fourth Amendment rights by acting in concert to enter their home to arrest them without a warrant or a valid exception to the warrant requirement.  Second, Plaintiffs claim that Ifantis, Bonds, and Miller violated Carolyn Albea's Fourth Amendment right to be free from false arrest and false imprisonment by arresting Carolyn Albea without probable cause.[9]  Third, Plaintiffs argue that Ifantis and Travis violated the Plaintiffs' Fourth Amendment right to be free from malicious prosecution by prosecuting Plaintiffs without probable cause.  The Court will address each of these alleged violations in turn.  But the Court must also note that stating a violation of his constitutional rights is insufficient for a plaintiff to recover damages under § 1983.  Plaintiffs

---

[9] Plaintiffs expressly concede Jerry Albea's claim of false arrest and false imprisonment. Mem. in Opp'n to Defs.' Mot. for Summ. J., at 17, Apr. 6, 2017, ECF No. 31-1.  Accordingly, the Court grants Defendants' Motion for Summary Judgment as to that claim, and it is hereby **DISMISSED**.

"must [have] allege[d] with particularity[] facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Thus, the Court "cannot ascribe the acts of all [law-enforcement-officer] Defendants to each individual defendant." *Id.* (citing *Landman*, 529 F.3d at 684–88; *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 404, 512–`5 (6th Cir. 1991)). Instead, Plaintiffs must demonstrate each Defendant's personal involvement in the violation. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976)).

### i.     Warrantless Entry of Plaintiffs' Home

Plaintiffs assert that Miller and Bonds deceitfully entered their home in collaboration with Ifantis and, while therein, effected a warrantless arrest without probable cause. At the outset, the Court notes "the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic." *Payton v. New York*, 445 U.S. 573, 602 (1980). Plaintiffs, in setting forth their argument, rely on a number of excellent descriptions of the contours of the Fourth Amendment in this particular area. "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)) (internal quotation marks omitted). "The Fourth Amendment has drawn a firm line at the entrance to the house." *United States v. Thomas*, 430 F.3d 274, 276 (6th Cir. 2005) (citation omitted). But Plaintiffs admit a well-settled and common-sense exception to this otherwise ironclad protection of a citizen's home: that citizen's consent. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (citing

*Davis v. United States*, 328 U.S. 582, 593–94 (1946)); *see also United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996) ("An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search."); *Guerra v. Rodriguez*, 2012 U.S. Dist. LEXIS 7838, at *40 (E.D. Ky. Jan. 24, 2012) (quoting *Slough v. Telb*, 644 F. Supp. 2d 978, 990 (N.D. Ohio 2009) ("A warrantless search and seizure does not violate constitutional rights where the individual has voluntarily consented to the search."). And Defendants first argue that no constitutional violation occurred when Miller and Bonds entered Plaintiffs' home because Plaintiffs consented to that entry when Jerry Albea invited Miller and Bonds into the home. Plaintiffs, however, counter that any "consent" secured by Defendants was ineffective because it was achieved through trickery and deceit.

Consent may be given in "words, gesture, or conduct." *Carter*, 378 F.3d at 587 (quoting *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir. 1976)). But regardless of the form, it must be given freely and voluntarily. *Id.* (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). The question here is whether consent was freely and voluntarily given by the Plaintiffs. And this determination is a question of fact based on the totality of the circumstances. *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). Thus, the Court "may not make credibility determinations []or weigh the evidence," *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014), and may only resolve the question in the moving parties' favor if a reasonable juror could, based upon the undisputed facts before the Court, only find in favor of Defendants. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Defendants, as Counties of the State of Tennessee and the officers thereof, would bear the burden of proving that consent was given voluntarily in the criminal context of a motion to suppress. *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998) (citing *Schneckloth*, 412 U.S. at 219; *United States v.*

*Kelly*, 913 F.2d 261, 265 (6th Cir. 1990)). And while the Courts of Appeals disagree on which party bears the burden of proof regarding voluntary consent in a civil case, *Valance v. Wisel*, 110 F.3d 1269, 1278 (7th Cir. 1997) (collecting cases), the Sixth Circuit, by which this Court is bound, has held that the government defendants invoking consent as an exception to the warrant requirement also bear the burden of proof in civil cases. *Andrews v. Hickman County*, 700 F.3d 845, 854 (6th Cir. 2012) (citing *Bumper*, 391 U.S. at 548; *Tarter v. Raybuck*, 742 F.2d 977, 980 (6th Cir. 1984)). Several factors should be considered when determining the voluntariness of a given consent such as the age, intelligence, and education of the individual; whether the individual understands the right to refuse consent; and whether the individual understands his constitutional rights. *Ivy*, 165 F.3d at 402 (citing *United States v. Jones*, 846 F.2d 358, 360 (6th Cir. 1988)). The Court also considers the details of the detention, such as its nature and length and the use of any coercive conduct by the officers involved, *Id.* (citing *Schneckloth*, 412 U.S. at 226), as well as any "more subtle forms of coercion that might flaw [an individual's] judgment." *Id.* (quoting *United States v. Watson*, 423 U.S. 411, 424 (1976)).

"[T]he Fourth and Fourteenth Amendments require that consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth*, 412 U.S. at 227. "The Fourth Amendment can certainly be violated by guileful as well as by forcible intrusions into a constitutionally protected area." *Hoffa v. United States*, 385 U.S. 293, 301 (1966) (citing *Gouled v. United States*, 255 U.S. 298 (1921)); *see also United States v. Boyd*, 910 F. Supp. 2d 995, 1002 (W.D. Mich. 2011) (noting that "the use of trickery, deception, and lies by police to gain entry into a home is a relevant factor in the consent analysis"). "For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Schneckloth*, 412

U.S. at 228.  To that point, the Supreme Court has restated its "classic admonition" on this matter:

> It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. . . .  It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.

*Id.* at 228–29 (quoting *Boyd v. United States*, 116 U.S. 616, 635 (1886)).

The undisputed facts show that, as Plaintiffs argue, Ifantis told Jerry Albea that he was sending a Gibson County deputy to check the well-being of the child and verify the contents of the Order.  Ifantis further told Jerry Albea that, if the Order stated that they were to pick up the minor child, "everything would be fine."  But then Ifantis spoke with Miller—before verifying the contents of the Order or the wellbeing of the child—telling him to go to Plaintiffs' home, arrest Plaintiffs, and transport them to the county line.  And after they indeed verified the contents of the Order and the wellbeing of the minor child, Miller and Bonds nonetheless arrested Plaintiffs based upon Ifantis's initial probable cause determination.  Plaintiffs argue that, because Defendants' obtained consent to enter by intentionally misleading Jerry Albea, the consent was not free and voluntary—and therefore it was ineffective to satisfy the Fourth Amendment's general warrant requirement.  Defendants—inexplicably, in light of bearing the burden of proof—muster only a single string citation in support of the proposition that the consent exception to the warrant requirement indeed exists.  They present no authority or even argument that Ifantis's deception does not deprive Jerry Abea's "consent" of voluntariness.  They rely solely on the undisputed fact that Jerry Albea invited Miller and Bonds into Plaintiffs' residence even in their second chance to address the issue in their Reply.  Plaintiffs on the other hand have provided the Court with ample authority supporting the conclusion that consent

achieved by trickery can deprive the consent of its voluntariness. The Court has been presented with no evidence regarding Jerry Albea's "age, intelligence, and education . . . ; whether [he] understands the right to refuse to consent; [or] whether [he] understands his or her constitutional rights." *Ivy*, 165 F.3d at 402. The detention, of course, was not coercive in any traditional sense as it constituted only the conjunction of Ifantis's phone call and Miller and Bonds arriving on Plaintiffs' porch. But because the Court is presented with authority that Ifantis's deceit as to why Miller and Bonds were coming to Plaintiffs' residence may deprive a consent of voluntariness and Defendants bear the burden of proving that consent was given freely and voluntarily, the Court cannot rule in Defendants' favor on this issue. The Court is of course mindful that deception of some degree is often a necessary tactic in law-enforcement operations. But where the Constitution has afforded such clear protections of the home that may only be overridden in specific circumstances, a strict demonstration of the circumstances constituting an exception is required. The Court therefore finds, for the purposes of this Motion, that the consent exception to the warrant requirement is not met.

Defendants may have had another constitutional basis, however, for entering the home without a warrant. Generally speaking, "the police must . . . obtain an arrest warrant before entering a man's house to seize his person." *Coolidge v. New Hampshire*, 403 U.S. 443, 477 (1971). It is a "'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton*, 445 U.S. at 586–87). "[A] search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, *unless the police can show* that it falls within one of a carefully defined set of exceptions based on *the presence of 'exigent circumstances.'*" *Coolidge*, 403 U.S. at 474–75 (emphasis added). Probable cause is insufficient to enter a home

and arrest its occupants. *Payton*, 445 U.S. at 590; *see also State v. Felix*, 811 N.W.2d 775, 785 (Wis. 2012) (citing *Payton*, 445 U.S. at 590) ("[E]ven if police have probable cause to arrest a defendant, entering the defendant's home without a warrant to accomplish an arrest violates the Fourth Amendment."). But Defendants make no argument as to the presence of an exigent circumstance. Thus, for the purposes of this Motion, the Court concludes that no exigent circumstance was present.

The Court is next concerned with which Defendants violated Plaintiffs' constitutional rights. Without one of the exceptions to the warrant requirement—again, for the purposes of this motion—Miller and Bonds's entry of the home in order to arrest Plaintiffs necessarily violated Plaintiffs' constitutional rights as afforded by the Fourth Amendment. The parties dispute what occurred on the porch of Plaintiffs' home before Jerry Albea let Miller and Bonds inside. According to Defendants, who rely on Jerry Albea's deposition, no party said anything before Jerry Albea invited Miller and Bonds into Plaintiffs' residence. Defs.' Reply to Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J., at 4, Apr. 20, 2017, ECF No. 33 (citing Dep. of Jerry Albea 79–80, Oct. 11, 2016 [hereinafter "Jerry Albea Dep."]). Plaintiffs, however, claim that Miller repeated what Ifantis had told Jerry Albea regarding the purpose of Miller and Bond's arrival at Plaintiffs' home, and Plaintiffs' point to Miller's deposition in support of this claim. Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J., at 10–11 (citing Dep. of Daniel Miller 82:8–24, Oct. 12, 2016 [hereinafter "Miller Dep."]). They further assert that Bonds knew the truth of the matter but remained silent while Miller deceived Jerry Albea. *Id.* at 11 (citing Dep. of Rhonda Bonds 19:9–24, 32:13–23, Oct. 12, 2016; Miller Dep. 30:11–31:23). These differing accounts present a question of material fact. Taken in a light favorable to Plaintiffs, the evidence supports Plaintiffs' allegations that Miller and Bonds violated Plaintiffs' constitutional rights. The Court

has not been convinced that, even if Miller and Bonds did not repeat Ifantis's deception, Miller and Bonds did not violate Plaintiffs' rights. But based on the foregoing dispute between the parties as to what occurred on Plaintiffs' front porch, the Court need not resolve that question today. In light of Plaintiffs' allegations and supporting evidence that Miller and Bonds entered Plaintiffs' home to arrest them without a warrant, consent, or exigent circumstances, Plaintiffs have sufficiently demonstrated a violation of their rights to be free from warrantless entry for the purposes of a motion for summary judgment.

The next question is whether Ifantis also participated in this violation. Defendants argue that Ifantis never entered Plaintiffs' home and that "there is no evidence whatsoever that Ifantis gave any type of orders/instructions/commands for any individual to enter . . . Plaintiffs' home at any time." Defs.' Reply to Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J., at 4 n.1, ECF No. 33 (citing Jerry Albea Dep. 81; Ifantis Dep. 93). Ifantis's statements to Jerry Albea certainly undermined the subsequent consent procured by Miller and Bonds, but are those statements and his request that Miller and Bonds arrest Plaintiffs sufficient to constitute personal involvement? The Court thinks so. Ifantis is essential to the occurrence of a violation at all since his actions precluded the Court from finding that the consent was voluntary. Further, the Court finds it unlikely that Ifantis was unaware that Miller and Bonds would be entering Plaintiffs' home in order to arrest them after sending Miller and Bonds to Plaintiffs' residence. Ifantis Dep. 86:1–18. Ifantis appeared to be dismissive of the idea of getting warrant in his deposition. *See id.* 87:6–10. And Ifantis's effort to deceive Jerry Albea belies any thought that Miller and Bonds would properly get consent to enter. Therefore, the Court is convinced that Ifantis was personally involved to a sufficient degree for Plaintiffs' claim for violation of Plaintiffs' Fourth Amendment right to be free from warrantless entry into their home to survive this Motion.

### ii.    False Imprisonment and False Arrest

"False arrest and false imprisonment overlap; the former is a species of the latter. 'Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is.'" *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007) (quoting Martin L. Newell, *A Treatise on the Law of Malicious Prosecution, False Imprisonment, and Abuse of Legal Process* § 2 (1892)). "Success on a Fourth Amendment false-arrest claim requires the plaintiff to prove the defendant officer arrested him despite lack of probable cause to believe the plaintiff committed a crime." *Beckham v. City of Euclid*, 689 F. App'x 409, 414 (6th 2017) (citing *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014)).

> "[T]he term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under circumstances which warrant suspicion." More recently, we said that "the *quanta* . . . of proof" appropriate in ordinary judicial proceedings are inapplicable to the [determination]. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause."

*Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969); *Brinegar v. United States*, 338 U.S. 160, 173 (1949); *Locke v. United States*, 11 U.S. 339, 348 (1813)). Probable cause requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1010–11 (6th Cir. 1999) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). "An arrest is constitutionally valid if

'. . . at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Legenzoff v. Steckel*, 564 F. App'x 136, 142 (6th Cir. 2014) (quoting *United States v. Dotson*, 49 F.3d 227, 230 (6th Cir. 1995)). "The analysis takes into account the totality of the circumstances . . . ." *Id.* (citing *Gates*, 462 U.S. at 233–34).

Broadly speaking, Plaintiffs argue that Defendants lacked knowledge of articulable facts that supported the probability that Carolyn Albea violated the custodial-interference statute, Tenn. Code Ann. § 39-13-306, or the statute criminalizing the contribution to the delinquency of a minor, Tenn. Code Ann. § 37-1-156, when she was arrested. Defendants rely on the information available to Ifantis—Hammond's statements, Hammond's physical injuries, Hammond's neighbor's statements, Hammond sister's statements, Plaintiffs' evasiveness, and Plaintiffs' direct refusal to return to the scene with the minor child[10]—as supportive of Ifantis's determination that probable cause existed for Plaintiffs for simple domestic assault, custodial interference, and contributing to the delinquency of a minor. It appears to the Court from the undisputed evidence that Ifantis had a reasonable basis for finding it probable that Carolyn Albea had participated in the commission of the alleged crimes. Plaintiffs devote a great deal of their argument as to whether the allegations in the record made by Hammond, Hammond's sister, and Hammond's neighbor support a violation of either statute as a matter of law by Carolyn Albea. But

> the ultimate touchstone of the Fourth Amendment is reasonableness. To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials . . . . . [The courts] have recognized

---

[10] The Court notes here that Hammond's injuries and Plaintiffs' evasiveness and refusal to return to the scene are all currently disputed with supporting evidence on both sides.

that searches and seizures based on mistakes of fact can be reasonable. . . . . The limit is that the mistakes must be those of reasonable men. But reasonable men make mistakes of law, too . . . .

*Heien v. North Carolina*, 135 S. Ct. 530, 536–38) (2014) (citations omitted) (internal quotation marks omitted). Plaintiffs admit that Defendants relayed the following information to Miller: there was a child custody dispute, Jerry Albea, or his daughters at his command, had allegedly assaulted Hammond, and then Plaintiffs took the minor child in violation of a court order. Miller admitted in his deposition that custodial interference was the only reason Carolyn Albea was taken into custody. The allegations known to Ifantis and as transmitted to Miller show at least a probability that Carolyn Albea committed the crime of custodial interference, even if that determination was ultimately incorrect. Thus, the Court finds that Plaintiffs cannot establish a violation of Carolyn Albea's constitutional right to be free from false arrest and false imprisonment. Defendants are therefore entitled to judgment on Carolyn Albea's § 1983 claim for false arrest and false imprisonment as a matter of law, and that claim is hereby **DISMISSED**.

### iii. Malicious Prosecution

And finally, Plaintiffs allege that Ifantis and Travis violated their individual rights to be free from malicious prosecution under the Fourth Amendment. As Plaintiffs point out, "[t]he Sixth Circuit recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). To establish a Fourth Amendment violation by malicious prosecution, Plaintiffs must demonstrate: "(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision

to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (citing *Sykes*, 625 F.3d at 308–09). Plaintiffs assert and the undisputed facts show that a criminal prosecution was initiated against Plaintiffs, Plaintiffs were deprived of liberty because of the prosecution by spending time in jail and being subjected to the conditions of bail, and that the proceedings were ultimately resolved in Plaintiffs' favor. Defendants' do not address the malicious prosecution directly. Their probable cause discussion in relation to Ifantis is the only discernible argument against this particular claim.[11] Thus, the only issue for the Court is whether the undisputed facts demonstrate that there was probable cause for the criminal prosecution.

At the outset, the Court finds that Ifantis and Travis were both personally involved in the violations claimed by Plaintiffs. Ifantis, by Defendants' own argument, made the probable-cause determinations that were the bases for these charges. Travis reiterated the same findings to the Clerk of the Madison County General Sessions Court. Although Travis merely relied on the facts as articulated by Ifantis, the Court considers the facts as they were thought to be at that time, meaning the Court's determination of reasonableness is made based on those facts known to Travis. If probable cause did not exist to prosecute a charge against either Plaintiff, it should have been clear to Travis.

For Carolyn Albea, the Court cannot definitively say that probable cause existed for a criminal prosecution in light of the existence of the Order. Carolyn Albea was never charged

---

[11] Defendants' discussion of Travis, of course, relates to this claim as it is the only claim Plaintiffs set forth against Travis. But the Court is currently addressing whether a constitutional violation occurred at all, and Defendants' argument seems aimed at Travis's lack of personal involvement.

with assault but with custodial interference and contributing to the delinquency of a minor.  Law enforcement is permitted the leeway to make reasonable mistakes, but the Court cannot say that either charge is reasonable after the initial arrest and the formalized process of a prosecution had begun.  Nothing in the record alleges that Carolyn Albea told one of her juvenile daughters to assault Hammond, the only possible basis for the contribution to the delinquency of a minor in this case.  Ifantis does lump together the Plaintiffs in a summary of the events, but that at most shows an issue for trial rather than a definitive basis for probable cause.  And as for the charge of custodial interference, Plaintiffs make the case that a cursory look at the Order should have demonstrated that Plaintiffs were entitled to take the minor child at the time of the incident.  Defendants respond, however, that the only proper recourse for Plaintiffs in light of Hammond's refusal to relinquish the child would have been through the court that entered the Order.  The statute Carolyn Albea was charged with, however, does not comport with this argument.  The undisputed facts quite clearly do not show that Plaintiffs sought to "[d]etain the [minor] child . . . *with the intent to violate the rightful custody of [Hammond]*."  *See* Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J., at 12–13, ECF No. 31-1 (quoting Tenn. Code Ann. § 39-13-306) (emphasis added).  For this reason, once Defendants had the additional time to examine all the information available to them, the Court is not convinced that the existence of probable cause is sufficiently definitive to find at the summary-judgment stage that Defendants did not violate Carolyn Albea's right to be free from malicious prosecution.  Accordingly, both of Carolyn Albea's claims for malicious prosecution survive this step of the qualified-immunity analysis.

For the same reason, the Court cannot conclude that probable cause definitively existed for a custodial interference charge against Jerry Albea.  Therefore, that claim also survives the first part of the qualified-immunity analysis.  Plaintiffs, however, concede their claim for

malicious prosecution against Jerry Albea for the contributing to the delinquency of a minor charge. Thus, summary judgment on that claim is proper, and it is accordingly **DISMISSED**. Plaintiffs raise one additional basis for a claim of the malicious prosecution of Jerry Albea: domestic assault. Plaintiffs point out that domestic assault is defined as "intentionally, knowingly, or recklessly causing bodily injury to a domestic abuse victim." *Id.* 21 (citing Tenn. Code Ann. § 39-13-111(b)). A domestic abuse victim is defined under the statute as a person falling within one of six categories set forth in section 39-13-111(a) of the Tennessee Code Annotated. Plaintiffs assert that Ifantis agreed that subsections (1)–(3) and (5)–(6) did not apply, meaning that Jerry Albea must have "intentionally, knowingly, or recklessly caus[ed] bodily injury to" an [a]dult[] or minor[] related by blood or adoption." *See* Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J., at 20–21, ECF No. 31-1 (citing Tenn. Code Ann. § 39-13-111(a)(4), (b); Ifantis Dep. 68:21–69:14, 72:11–22). As before, Defendants rely only on Ifantis's initial probable cause determination and Travis's lack of interaction with Defendants. Thus, Plaintiffs are uncontradicted in their supported point that the charge was made under subsection (4). No evidence, however, suggests any such relation between Jerry Albea and Hammond. The domestic feel to the underlying dispute, referenced by Ifantis in the portion of the deposition cited by Plaintiffs, because the minor child at its center certainly suffices as a reasonable mistake of law at the time of Plaintiffs' arrest. But where the heat of moment has cooled, it is no longer reasonable to suppose that Jerry Albea was related by blood or adoption to the mother of his son's child in order to satisfy the statute. Accordingly, this claim also survives the first step of the qualified-immunity analysis.

### 2. Whether the Constitutional Right Was Clearly Established

Having found that Defendants violated Plaintiff's constitutional rights, the Court must now determine whether each right was clearly established. In doing so, the Court "look[s] first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit, then to] other [district] courts within our circuit, and finally to decisions of other circuits." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (quoting *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994)). "In order for a constitutional right to be clearly established, there need not be a case with the exact same fact pattern, or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

#### i. Right to Be Free from a Warrantless Arrest in Home

"The bedrock Fourth Amendment principles announced in *Payton* and *Welsh* demonstrate that the officers' forced warrantless entry into [Plaintiffs'] home was presumptively unreasonable." *Id.*; *see also Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (quoting *United States v. U.S. District Court* (*Keith*), 407 U.S. 297, 313 (1972)) ("It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"); *Payton v. New York*, 445 U.S. 573, 590 (1980) ("In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."). As mentioned in the Court's discussion of the constitutional violation, "forced" includes less overt methods including guile. *Hoffa v. United States*, 385 U.S. 293, 301 (1966) (citing *Gouled v. United States*, 255 U.S. 298 (1921)); *United States v. Boyd*,

910 F. Supp. 2d 995, 1002 (W.D. Mich. 2011). Thus, the Court finds that Plaintiffs' constitutional rights to be free from a warrantless arrest in their home are clearly established in the Constitution itself and the case law of the Supreme Court. Accordingly, qualified immunity is not available for Ifantis, Miller, or Bonds on Plaintiffs' Fourth Amendment claim for violation of their right to be free from warrantless entry into Plaintiffs' home.

### ii. Right to Be Free from Prosecution Without Probable Cause

The Court now examines whether Carolyn Albea's right to be free from a malicious prosecution on the charges for contribution to the delinquency of a minor or custodial interference was clearly established. The Court also examines the same for Jerry Albea's charges of custodial interference and domestic assault. "A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment 'only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause.'" *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) (quoting *Newman v. Township of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014)). "[A] defendant's participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake, to satisfy the elements of a malicious prosecution claim under the Fourth Amendment." *Id.* The Court finds the Ifantis's and Travis's application of law to the facts of this case to be unreasonable, but it cannot say that their actions rise to level of "deliberate or reckless falsehoods." There is no indication in the facts that Ifantis and Travis sought to deliberately charge Plaintiffs with crimes they had not committed. Nor is there any indication that Ifantis and Travis were reckless in doing so. Recklessness requires something more than unreasonable behavior; it requires the callous disregard of the likelihood that harm may result from such

behavior. In *Moseley*, the Sixth Circuit appears to have ultimately been looking for allegations that the officers "testified falsely or recklessly" against the plaintiff. *Moseley*, 790 F.3d at 655. Though unlike that case, Ifantis and Travis were involved after the arrest. *See id.* at 655–56. Yet there is no evidence that Ifantis (or through Ifantis, Travis) relied on any information other than what was gathered in good faith. The particular statutes that Plaintiffs were charged under based on this information were unreasonable in certain instances, and while that may have made Ifantis and Travis negligent, it does not follow that their actions were reckless or deliberate. Accordingly, Plaintiffs rights were not clearly established under the case law of the Sixth Circuit, and Ifantis and Travis are entitled to qualified immunity as to the remaining bases for Plaintiffs' malicious prosecution claims. Ifantis and Travis are therefore entitled to summary judgment on such claims, and they are hereby **DISMISSED**.

## B. Plaintiffs' State-Law Claims

This Court likely lacks jurisdiction over all of Plaintiffs' state-law claims. The Tennessee Governmental Tort Liability Act (the "GTLA") provides that all governmental entities of the State of Tennessee are immune from suit except by the removal of that immunity by the provisions of the GTLA. Tenn. Code Ann. § 29-20-201(a). The immunity provided to a governmental entity extends to its employees. *See id.* § 29-20-313(a); *Cunningham v. Reid*, 337 F. Supp. 2d 1064, 1069–70 (W.D. Tenn. 2004) (citations omitted). The law-enforcement-officer Defendants appear to employees under the GTLA. *See* Tenn. Code Ann. §§ 29-20-102(2), -107(d). The GTLA further provides that claims brought when immunity has been removed must be in brought in strict compliance with the terms of the GTLA. *Id.* § 29-20-201(c). The GTLA vests exclusive jurisdiction over these claims in the Tennessee Circuit Courts. *Id.* § 29-20-307.

The GTLA states that the starting point from which all immunity must be removed is that "all governmental entities *shall be immune from suit for any injury*." *Id.* § 29-20-201(a). It does not refer to any type of action but provides an absolute immunity to actions for damages. The GTLA further states that "all . . . statutes in conflict with [it] shall only be applicable to governmental entities exercising their rights under this chapter as provided for by [section] 29-20-103." *Id.* § 29-20-104(a). Section 29-20-103 provided a temporary way for governmental entities to exempt themselves from the provisions of the GTLA. Thus, the GTLA provides that, in Tennessee, all suits for damages against governmental entities and their employees under state law must pass through the provisions of the GTLA. While the GTLA's provisions subsequently remove the initial immunity and make way for other provisions of Tennessee law, they do not alter the fact that the Tennessee legislature has vested exclusive jurisdiction of state-law claims against Tennessee governmental entities and their employees in the Tennessee Circuit Courts.

Plaintiffs argue, however, that the GTLA does not supersede the provision under which they bring at least some of their state law claims, section 8-8-302 of the Tennessee Code Annotated. In doing so, Plaintiffs rely on *Hunt v. Wayne County*, 2012 U.S. Dist. LEXIS 11126 (M.D. Tenn. Jan. 31, 2012) (holding that the GTLA only superseded other Tennessee statutes that permitted actions based on negligence). The Court will not resolve this question of Tennessee law, however, because it alternatively declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. A district court may decline to exercise supplemental jurisdiction if it has dismissed the claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3), or if "in exceptional circumstances," there are "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The exclusivity provision of the GTLA provides a compelling reason for this court to decline supplemental jurisdiction here. *See* 28 U.S.C. §

1367(c)(4); *Cunningham*, 337 F. Supp. 2d at 1070 (citing *Spurlock v. Whitley*, 971 F. Supp. 1166 (M.D. Tenn. 1997), *aff'd* 167 F.3d 995 (6th Cir. 1999)). The Court therefore declines to exercise jurisdiction over those Defendants subject to the GTLA. And as the Court has stated, this appears to capture all Defendants. The Court additionally declines to exercise jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiffs' state-law claims against the County Defendants and Defendant Travis because there are no remaining federal claims against those Defendants. Plaintiff's argument that section 8-8-302 was not superseded by the GTLA only applies to the County Defendants because that particular statute permits suit against the county but not a deputy. But as the Court has declined to exercise jurisdiction over Plaintiffs' state-law claims against the County Defendants on other grounds, 28 U.S.C. § 1367(c) covers all Defendants before the Court even if the GTLA's exclusivity provision does not apply to the County Defendants.[12] Thus, on one or more of the aforementioned grounds, Plaintiffs' state-law claims are **DISMISSED** without prejudice. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) (stating that "the dismissal of the pendent claims should expressly be without prejudice so that the plaintiff may refile his claims in the appropriate state court").

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' claims for violation of their Fourth Amendment right to be free from warrantless entry into their home against Ifantis, Miller, and Bonds survive this Motion, but all other federal claims are **DISMISSED**. All of Plaintiffs' state-

---

[12] The Court also thinks that Plaintiffs' claims against the County Defendants may fall under an additional basis for declining jurisdiction: "the claim[s] raise[] a . . . complex issue of State law." 28 U.S.C. § 1367(c)(1). But the Court does not rely on that basis today.

law claims are **DISMISSED** without prejudice.  As a result, Travis, Madison County, and Gibson County are dismissed from this action entirely.

       **It is so ORDERED**.

                                             **s/  S. Thomas Anderson**
                                           S. THOMAS ANDERSON
                                           CHIEF UNITED STATES DISTRICT JUDGE

                                           Date:  November 16, 2017.